ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| ISABEL CRISTINA HURTADO SUÁREZ<br><br>Apelante<br><br>v.<br><br>COOPERATIVA DE SEGUROS DE VIDA DE PUERTO RICO (COSVI) Y OTROS<br><br>Apelada | KLAN202400890 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Sobre: Despido Injustificado, Ley Núm. 80 del 30 de mayo de 1976, según enmendada; Procedimiento Sumario, Ley Núm. 2<br><br>Caso Núm.: SJ2022CV09952 |

Panel integrado por su presidente, el Juez Ronda del Toro, el Juez Pérez Ocasio y el Juez Sánchez Báez[1]

Sánchez Báez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de abril de 2025.

Compareció la Sra. Isabel Cristina Huertas Suárez (en adelante, "señora Huertas Suárez" o "apelante"), mediante recurso de apelación presentado el 3 de octubre de 2024. Nos solicitó la revocación de una *Sentencia* emitida el 21 de septiembre de 2024 y notificada el 23 de septiembre de 2024, por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, "foro primario").[2] Por virtud de esta, el Foro primario declaró No Ha Lugar la *Querella* de la apelante sobre despido injustificado.

Por los fundamentos que expondremos a continuación, **confirmamos** el dictamen apelado.

**-I-**

---

[1] Mediante Orden Administrativa OTA-2025-002 de 9 de enero de 2025, se designó al Hon. Isaías Sánchez Báez en sustitución de la Hon. Ivelisse Domínguez Irizarry.
[2] Apéndice de la Apelante, anejo 1, págs. 1-14.

El 14 de noviembre de 2022, la señora Huertas Suárez presentó una *Querella* contra la Cooperativa de Seguros de Vida de Puerto Rico (en adelante, "COSVI" o "apelada") por despido injustificado bajo la Ley Núm. 80 de 30 de mayo de 1976, según, enmendada, conocida como la "Ley Sobre Despidos Injustificados" 29 LPRA sec. 185a *et seq.* (en adelante, "Ley Núm. 80"), al amparo de la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, conocida como la "Ley de Procedimiento Sumario de Reclamaciones Laborales" 32 LPRA sec. 3118 *et seq.* (en adelante, "Ley Núm. 2"). La apelante adujo que, a pesar de ser una excelente empleada sin amonestaciones ni quejas en su contra, COSVI la despidió sin justa causa.

Por su parte, COSVI presentó una *Contestación a Querella* el 21 de noviembre de 2022.[3] En esencia, negó las alegaciones sobre despido injustificado y adujo que despidió a la señora Huertas Suárez porque violó el manual de personal, las normas de seguridad y confidencialidad, procedimientos, políticas, sus compromisos contractuales e instrucciones de sus supervisores. Argumentó que dichas violaciones se suscitaron cuando la apelante divulgó y compartió información confidencial e información personal protegida de los clientes de COSVI con personas que no tenían autorización para recibir dicha información y sin la autorización de las personas concernidas o de la gerencia. La información compartida se trata de nombres, fechas de nacimiento, números de seguro social, direcciones y cuentas bancarias de los clientes. Así las cosas, la apelada alegó que el despido de la señora Huertas Suárez fue uno justificado toda vez que sus acciones pusieron y ponen en riesgo la normal y eficiente operación de COSVI.

---

[3] *Íd.,* anejo 3, 19-22, págs.

Tras varios trámites procesales, el 14 de junio de 2023, COVSI presentó una *Moción de Sentencia Sumaria.*[4] En ella, planteó que la *Querella* incoada era improcedente porque el despido de la señora Huertas Suárez se hizo conforme a la Ley Núm. 80. En síntesis, aseveró que la apelante comenzó a trabajar para COSVI en diciembre de 2017 como Representante Autorizado Exclusivo (en adelante, "RAE").[5] Además, alegó que en su primer día de empleo, la señora Huertas Suárez firmó un *Acuerdo de Confidencialidad* junto con una copia y orientación sobre el *Manual de Personal.*[6] De igual forma, la apelante completó el material del Adiestramiento de Seguridad Nivel 5 y como parte de este, se le brindó un examen para el Adiestramiento de la Seguridad de Información en el que se le realizaron varias preguntas, entre estas, qué constituía información confidencial de los clientes. [7] Durante este período, la señora apelante conoció al Sr. Jaime Carrión Brunet (en adelante, "señor Carrión Brunet") quien también se desempeñaba como RAE. Más tarde, en febrero del año 2022, COSVI ascendió a la señora Huertas Suárez a la posición de Analista de Reclamaciones. Luego de su ascenso, la apelante continuó comunicándose con el señor Carrión Brunet. De acuerdo con la apelada, los Analistas de Reclamaciones no tienen motivos para interactuar con los RAEs. Los Analistas de Reclamaciones tampoco tienen autorización para proveer información personal de los clientes a ninguna persona, incluyendo a un Representante de Ventas.

Asimismo, COSVI señaló que en o alrededor del 12 de abril de 2022, una asegurada nombrada por sus iniciales como A.S.F. se comunicó con el centro de llamadas de COSVI. El propósito de su llamada fue para corroborar si el señor Carrión Brunet laboraba

---

[4] Apéndice de la Apelante, anejo 5, 25-240, págs.
[5] Apéndice de la Apelante, anejo 5, págs. 128-131.
[6] Apéndice de la Apelante, anejo 5, págs. 132-134 y 191.
[7] Apéndice de la Apelante, anejo 5, pág. 193.

para COSVI como RAE. Según explicó A.S.F., el señor Carrió Brunet la llamó con sus datos personales —incluyendo el número de cuenta de su esposo— con el fin de gestionar ventas de productos de COSVI.[8] Posteriormente, la agente que gestionó la póliza de A.S.F. le notificó a COSVI que su asegurada estaba preocupada por lo sucedido con el señor Carrión Brunet y que quería cancelar su póliza porque temía ser víctima de robo de identidad.[9] COSVI se comunicó con A.S.F. y, luego de auscultar lo acontecido con el señor Carrión Brunet, le transfirió el asunto a la Oficina de Auditoría y Cumplimiento bajo la supervisión de su directora, la señora Gretel L. González Arroyo (en adelante, "señora González Arroyo").

COSVI arguyó que al finalizar su investigación, la señora González Arroyo concluyó que la señora Hurtado Suárez compartió información confidencial (*i.e.*, nombre, dirección, teléfono, seguro social, e información financiera) de clientes que no pertenecían a la cartera del señor Carrión Brunet.[10] Asimismo, concluyó que la apelante compartió dicha información mediante correos electrónicos que contenían capturas de pantalla de la data que la propia señora Huertas Suárez accedía en la plataforma *LION*.[11] Asimismo, la señora González Arroyo acotó que la apelante no tenía autorización de su supervisora para enviarle la información al señor Carrión Brunet. Además, la señora González Arroyo señaló que el señor Carrión Brunet utilizó la información provista por la apelante para hacer gestiones de ventas que le beneficiaban por generarle comisiones.

El 20 de julio de 2022, COSVI despidió al señor Carrión Brunet y a la señora Huertas Suárez. Así las cosas, la apelada

---

[8] Apéndice de la Apelante, anejo 5, pág. 199.
[9] Apéndice de la Apelante, anejo 5, págs. 197-198.
[10] Apéndice de la Apelante, anejo 5, págs. 229-230.
[11] *LION* es un sistema de informática utilizado por COSVI que opera en módulos. Solamente aquellos empleados cuyas funciones requieren el acceso a la información contenida en un módulo en particular pueden acceder —con nombre de usuario y contraseña personalizados— la información allí contenida.

arguyó que el despido de la apelante fue justificado toda vez que violentó el manual de empleados y colocó en peligro la información personal de los clientes. Por todo esto, solicitó la desestimación de la *Querella*.

La apelante presentó su *Oposición a Moción de Sentencia Sumaria presentada por la Parte Querellada* el 21 de julio de 2023.[12] En apretada síntesis, alegó que COSVI no presentó ni un solo hecho que concluyera que la señora Huertas Suárez no podía compartir información con otro compañero de trabajo. La apelante señaló que la consigna de COSVI es "*Somos un Equipo*" y que dicho mensaje contrasta con los planteamientos de la apelada. Por otro lado, señaló que COSVI prohíbe que sus empleados compartan información con terceros y personas no autorizadas. Adujo que los empleados de la propia empresa no pueden considerarse una persona no autorizada. Resaltó que su supervisora —quien alega estuvo al tanto de todas sus ejecutorias— no sufrió repercusiones de ninguna clase por los hechos acaecidos entre la propia apelante y el señor Carrión Brunet.

El 10 de abril de 2024, el foro primario emitió una *Resolución RPC 36.4*.[13] En esta, declaró No Ha Lugar la *Moción de Sentencia Sumaria* de COSVI por entender que aun existían asuntos en controversia. Entiéndase, (1) si la señora Hurtado Suárez compartió información confidencial con indicadores personales de clientes de COSVI con otro empleado de la empresa, sin autorización; (2) si la señora Hurtado Suárez violó las normas de privacidad de COSVI en torno a la información personal de clientes; (3) si de haber incurrido en una violación, se justificaba el despido de la señora Hurtado Suárez.

---

[12] Apéndice de la Apelante, anejo 7, págs. 242-261.
[13] Notificada el 11 de abril de 2024. Apéndice de la Apelante, anejo 8, págs. 262-269.

Así las cosas, el Foro primario celebró la vista en su fondo los días **9 y 10 de septiembre de 2024** en la cual las partes presentaron los testimonios de varios testigos. Específicamente, la señora Huertas Suárez presentó su propio testimonio al igual que el del Sr. Raúl Santiago Vélez, Vicepresidente de Informática y Tecnología de COSVI (en adelante, "señor Santiago Vélez").[14] Por su parte, COSVI presentó los testimonios de la Sra. Miriel Bermúdez Pérez, Directora del Departamento de Experiencia del Cliente de COSVI (en adelante, "señora Bermúdez Pérez"), la señora González Arroyo; la Sra. Yarimar González Peña, Directora Supervisora de Reclamaciones (en adelante, "señora González Peña"); y, la Sra. Marigeli Báez Segarra, Directora de Recursos Humanos de COSVI (en adelante, "señora Báez Segarra").

Surge de la Transcripción de la Prueba Oral (en adelante, "TPO"), que el **señor Santiago Vélez** fue el primer testigo presentado por la señora Hurtado Suárez el **9 de septiembre de 2024**. En lo pertinente a la controversia de epígrafe, este declaró que el sistema electrónico informático de COSVI produce una alerta si un empleado envía información confidencial fuera de la empresa, pero no así cuando la información se comparte de manera interna.[15] En el caso de la señora Hurtado Suárez, declaró que no se recibió alerta alguna y que fue el Departamento de Auditoría quien solicitó información sobre el correo electrónico de la apelante.[16]

A preguntas del representante legal de COSVI, declaró que solo los empleados autorizados a petición de sus supervisores, tienen acceso a los módulos de *LION*.[17] De igual modo, declaró que los RAEs no tienen autoridad para acceder información de clientes

---

[14] Originalmente, el señor Santiago Vélez figuraba en la lista de testigos de COSVI. Sin embargo, la apelada decidió no presentar el testimonio del señor Santiago Vélez. Ante este cuadro, y con la venia del Foro primario, la señora Hurtado Suárez presentó el testimonio del señor Santiago Vélez.
[15] TPO, pág. 16, líneas 6-20.
[16] TPO, pág. 18, líneas 7-14.
[17] TPO, pág. 26, líneas 3-6.

cuando no son los agentes asignados ya que el sistema bloquea esa información.[18] El señor Santiago Vélez indicó que el Manual de Empleados de COSVI especifica a quiénes se les puede o no compartir información confidencial.[19] Declaró que entre las personas no autorizadas a recibir información confidencial se encuentran los clientes, empleados o personas ajenas a la institución.[20] De igual forma, el señor Santiago Vélez señaló que el Manual de Empleados de COSVI también prohíbe utilizar los sistemas de información para fines personales o para *transferir, comunicar o divulgar su contenido a otros empleados o personas ajenas a la institución.*[21]

En su redirecto, el señor Santiago Vélez declaró que de acuerdo con el Manual de Empleados de COSVI, la información confidencial no debe revelarse a terceros no autorizados.[22] Sin embargo, reconoció que no recordaba haber leído una definición de "tercera persona" en el Manual de Empleados de COSVI y tampoco la encontró en dicho manual.[23]

Por su parte, la **señora Huertas Suárez** declaró que en ningún momento compartió información confidencial ni incumplió con el Manual de Empleados de COSVI.[24] Aseveró que si compartió información confidencial de clientes, tuvo que ser por instrucciones, porque era parte de sus funciones o porque algún representante autorizado exclusivo de COSVI se lo pidió.[25] Declaró que la comunicación con sus compañeros era cordial y a tono con la insignia de COSVI, "*Somos un equipo*".[26] Para la apelante, dicha consigna significa que todos los empleados de COSVI trabajan en

---

[18] TPO, pág. 29, líneas 9-12.
[19] TPO, pág. 37, líneas 16-21.
[20] TPO, pág. 39, líneas 5-15.
[21] TPO, pág. 39, líneas 16-21.
[22] TPO, pág. 44, líneas 10-19; pág. 45, líneas 3-6.
[23] TPO, pág. 45, líneas 7-13, pág. 46, líneas 17-23.
[24] TPO, pág. 52, líneas 6-7.
[25] TPO, pág. 52, líneas 9-13.
[26] TPO, pág. 55, líneas 9-15.

equipo para conseguir un bien común en beneficio de la cooperativa y que para ello, debía haber una buena comunicación entre los empleados.[27] Explicó que, a su entender, el Manual de Empleados prohíbe la divulgación de información confidencial a terceros o personas no autorizadas y que los RAEs de COSVI son personas internas autorizadas dentro del equipo.[28]

Sobre el señor Carrión Brunet, la apelante declaró que este era una persona autorizada, que la información confidencial permaneció en la red interna de COSVI y que se utilizó para el beneficio de la apelada.[29] La señora Hurtado Suárez añadió que enviarle la información confidencial al señor Carrión Brunet beneficiaba a COSVI en la retención de clientes y ventas.[30]

En el contrainterrogatorio, la apelante admitió que le cursó correos electrónicos al señor Carrión Brunet con información de los clientes de COSVI.[31] También admitió que el señor Carrión Brunet le pidió información de unas pólizas de unos clientes y que ella proveyó dicha información.[32] De igual forma, reconoció que el intercambio de correos electrónicos ocurrió en el sistema de correos electrónicos de COSVI y que la información provino de *LION*.[33] Asimismo, admitió que en varias ocasiones le envió al señor Carrión Brunet capturas de pantalla del sistema *LION* por correo electrónico con la información confidencial de varios clientes.[34] Además, reconoció en corte abierta que el señor Carrión Brunet no era el agente asignado a ninguno de los clientes cuya información confidencial le divulgó.[35]

---

[27] TPO, pág. 55, líneas 16-21.
[28] TPO, pág. 56, líneas 8-22.
[29] TPO, pág. 75, líneas 21-24; pág. 76, líneas 1-5.
[30] TPO, pág. 76, líneas 12-18.
[31] TPO, pág. 85, líneas 9-13.
[32] TPO, pág. 85, líneas 14-18.
[33] TPO, pág. 85, líneas 19-24; pág. 86, líneas 1-9.
[34] TPO, págs. 95-168. Véase, Apéndice de la Apelante, anejo 20, Sometido de Forma Confidencial.
[35] *Íd.*

La señora Hurtado Suárez reconoció que no revisó si el señor Carrión Brunet tenía autorización para recibir información confidencial de unos clientes que no eran de su cartera.[36] Admitió que no le pidió permiso a su supervisora para enviarle la información confidencial al señor Carrión Brunet.[37] Añadió que ningún otro RAE le pidió información confidencial de los clientes ni conoce de otro analista de reclamaciones que divulgue información confidencial.[38] De igual modo, reconoció que no copió a su supervisora ni al supervisor del señor Carrión Brunet en los correos electrónicos.[39]

A preguntas de su representante legal, la señora Hurtado Suárez señaló que compartió la información confidencial con el señor Carrión Brunet porque era un representante autorizado y porque nadie le indicó que no podía compartirle dicha información para que este realizara su trabajo.[40] La apelante aseveró que el señor Carrión Brunet utilizó la información confidencial para actualizar las pólizas de dichos clientes ya que eran pólizas huérfanas por pertenecer a clientes desatendidos por los agentes asignados.[41]

Durante su re-contrainterrogatorio, la apelante reconoció que el 15 de diciembre de 2022, fue depuesta por el representante legal de COSVI.[42] Que, durante dicha deposición, declaró que las pólizas son huérfanas cuando no tienen agentes asignados o los agentes estaban inactivos.[43] Además, reconoció que COSVI tenía una política para la asignación de pólizas huérfanas y que son los supervisores quienes asignan las pólizas huérfanas.[44]

---

[36] TPO, pág. 171, líneas 10-13.
[37] TPO, *Íd.*, líneas 14-18.
[38] TPO, pág. 172, líneas 4-11.
[39] TPO, pág. 173, líneas 8-15.
[40] TPO, pág. 177, líneas 6-12.
[41] TPO, pág. 177, líneas 20-24; pág. 178, líneas 1-21.
[42] TPO, pág. 190, líneas 8-13.
[43] TPO, pág. 191, líneas 3-14. Véase, Apéndice de la Apelante, anejo 5, pág. 211.
[44] TPO, pág. 192, líneas 21-24; pág. 193, líneas 1-10, 20-23.

En re-redirecto, la señora Hurtado Suárez declaró que las pólizas quedan huérfanas cuando un agente ya no está en la cooperativa o está inactivo en el sistema.[45] También declaró que "todos nosotros" —refiriéndose a sí misma y a los demás empleados de COSVI— tienen acceso a toda la información de los clientes para manejar las distintas tareas que les eran asignadas.[46] Finalmente, reiteró que la información compartida con el señor Carrión Brunet no salió de COSVI y solo se utilizó para darle seguimiento a los clientes.[47] Una vez finalizó su testimonio, el caso de la apelante quedó sometido ante el foro primario.

El **10 de septiembre de 2024**, COSVI presentó varios testigos, comenzando con la señora **Bermúdez Pérez**, Supervisora de Servicio al Cliente y Directora de Experiencia del Cliente. Esta declaró sobre la llamada telefónica que A.S.F. le realizó al centro de llamadas de COSVI luego de ser contactada por el señor Carrión Brunet. En esencia, declaró que A.S.F. expresó su preocupación en cuanto a que alguien tuviese su información confidencial y personal.[48] Por ello, llamó al centro de llamadas de COSVI para poder validar si el agente que realizó la llamada trabajaba en la cooperativa.[49] La señora Bermúdez Pérez declaró que luego de recibir la llamada de A.S.F., COSVI le asignó a un representante la tarea de comunicarse con A.S.F. y así, obtener mayor información sobre el suceso.[50] Posteriormente, el asunto se refirió al Departamento de Auditoría y Cumplimiento.[51]

A preguntas del representante legal de la apelante, la señora Bermúdez Pérez declaró que la llamada de A.S.F. era para validar si

---

[45] TPO, pág. 198, líneas 20-24; pág. 199, líneas 1-4.
[46] TPO, pág. 199, líneas 13-17.
[47] TPO, pág. 201, líneas 6-14.
[48] TPO, pág. 219, líneas 16-17.
[49] TPO, pág. 219, líneas 18-20.
[50] TPO, págs. 219-220.
[51] TPO, pág. 225, líneas 5-6.

el representante que la llamó era empelado de COSVI.[52] Además, declaró que en ningún momento se mencionó a la señora Hurtado Suárez en la llamada.[53] Finalmente, declaró que evaluó a la apelante por su desempeño y que esta obtuvo una puntuación final de alto desempeño.[54]

La segunda testigo en prestar su testimonio fue la **señora González Arroyo**, Directora de la Oficina de Auditoría Interna y Cumplimiento. Su testimonio se centró en la investigación que realizó a raíz de la llamada de A.S.F. Declaró que durante la investigación, obtuvo acceso a los mensajes habidos entre el señor Carrión Brunet y la señora Hurtado Suárez.[55] Luego de ese hallazgo, la Oficina de Auditoría Interna y Cumplimiento recopiló la data, la presentó en las áreas pertinentes y realizó un reporte señalando que la información compartida por la señora Hurtado Suárez era confidencial y que el señor Carrión Brunet no tenía acceso a ella.[56] La información consistía de capturas de pantallas del sistema *LION*, que violentó el control interno de COSVI al igual sus políticas de confidencialidad y privacidad. [57] Encontraron, además, que la apelante le compartió información al señor Carrión Brunet por *OneNote*.[58] La señora González Arroyo aclaró que los representantes solo tienen accesos a las pólizas que les fueron asignadas.[59] Añadió que, además de la llamada de A.S.F., recibieron una queja por parte del representante autorizado para dicha clienta.[60]

Durante su contrainterrogatorio, la señora González Arroyo declaró que no entrevistó a ningún empleado de COSVI para realizar su investigación, incluyendo a la apelante y al señor Carrión

---

[52] TPO, pág. 227, líneas 20-24.
[53] TPO, pág. 228, líneas 1-12.
[54] TPO, pág. 230, líneas 9-13.
[55] TPO, pág. 241, líneas 5-10.
[56] TPO, pág. 241, líneas 13-22.
[57] TPO, págs. 245-246.
[58] TPO, pág. 250, líneas 10-12.
[59] TPO, pág. 249, líneas 13-17.
[60] TPO, pág. 258, líneas 18-21.

Brunet.[61] También declaró que en su informe recomendó acción correctiva y reforzar el cumplimiento de privacidad y confidencialidad de la información entre los empleados.[62] Reconoció que su recomendación no fue el despido de ambos empleados.[63] Sin embargo, a preguntas del representante legal de COSVI aclaró que la Oficina de Auditoría Interna y Cumplimiento no tiene autoridad para hacer recomendaciones de despido.[64]

Por su parte, la señora González Peña testificó sobre la supervisión que ejerció sobre la señora Hurtado Suárez como supervisora de reclamaciones. En lo pertinente al caso, declaró que no hay ninguna necesidad para que un analista de reclamaciones se comunique con un RAE.[65] Añadió que los analistas de reclamaciones no tienen que compartir ningún tipo de información confidencial de los clientes con los RAEs.[66] Declaró, además, que durante sus tres años como supervisora, la única analista de reclamaciones que compartió información confidencial con un RAE fue la señora Hurtado Suárez.[67] Señaló que no autorizó a la apelante a compartir información confidencial con el señor Carrión Brunet y que desconocía de dicha actividad.[68]

Finalmente, la última testigo de COSVI fue la señora Báez Segarra, Directora de Recursos Humanos. Esta declaró que luego de recibir el informe de la Oficina de Auditoría Interna y Cumplimiento, procedió a evaluar qué faltas se cometieron en contravención del Manual de Empleados y en base a ello, emitió su recomendación de despido.[69] Durante su contrainterrogatorio, reconoció que aparte del informe preparado por la Oficina de Auditoría Interna y

---

[61] TPO, pág. 268, líneas 8-14.
[62] TPO, pág. 270, líneas 7-17.
[63] TPO, pág. 270, líneas 18-20.
[64] TPO, pág. 276.
[65] TPO, pág. 295, líneas 12-16.
[66] TPO, pág. 295, líneas, 17-20.
[67] TPO, pág. 296, líneas 7-13.
[68] TPO, pág. 296, líneas 14-24.
[69] TPO, pág. 312, líneas 4-13.

Cumplimiento, no utilizó ninguna otra evidencia para recomendar el despido de la apelante.[70] Reconoció, además, que del informe no surge las acciones de la señora Hurtado Suárez hayan afectado el buen y normal funcionamiento de COSVI, sino que fue una conclusión hecha por ella misma.[71] Además, señaló que la mayor preocupación de COSVI era recibir una multa por parte del Comisionado de Seguros, recibir demandas y un impacto negativo en las ventas.[72] Culminado el testimonio de la señora Báez Segarra, COSVI sometió su caso ante la consideración del foro primario.

El 21 de septiembre de 2024, el foro primario emitió una *Sentencia* y ella realizó sus determinaciones de hechos. Entre estas, las siguientes:[73]

[...]

4. El Manual del Empleado implantado por COSVI contiene un Código de Ética que, entre otras cosas, dispone:
   Esta norma tiene el propósito de asegurar un funcionamiento adecuado y efectivo del personal de la Cooperativa de Seguros de Vida de Puerto Rico, COSVI, así como de su prestigio. Todo el personal se compromete a: [...]

   No divulgar información relacionada con los asegurados o clientes, ya que la misma es de carácter confidencial. Entrada 31.

5. El Manual del Empleado de COSVI también contiene un Acuerdo de Confidencialidad que establece:
   [...] Información Confidencial significa: toda información de índole técnico, comercial y estratégica, de mercadeo, y cualquier información relacionada con las operaciones de negocios presentes y futuros, financiera, incluyendo [...] sin limitarse a valores, objetos y conceptos, productos y servicios de productos y estrategias aplicables a los mercados en los cuales COSVI, lleva a cabo negocio, información referente a la salud de cualquier individuo, asegurado o empleado y de cualquier información que COSVI, tenga por confidencial y/o propietaria; la cual no sea de conocimiento general fuera de la empresa y por tanto, el descubrir la misma a terceros no autorizados, con toda probabilidad le causaría daños a COSVI [...]

   Para propósitos de este Acuerdo, COSVI es la entidad a quien pertenece, es beneficiario o en quien legalmente se ha depositado y/o confiado dicha información Confidencial.

---

[70] TPO, pág. 315, líneas 14-17.
[71] TPO, pág. 316, líneas 12-19.
[72] TPO, pág. 327.
[73] Apéndice de la Apelante, anejo 1, págs. 3-11.

Para propósitos de este Acuerdo, el Beneficiario, es aquel que recibe de manera intencional o no, directa o indirectamente, la información Confidencial.

Por lo cual, usted como empleado, por medio de este acuerdo, acepta y se compromete en cuanto a lo que es Información Confidencial a:
1. No divulgar, salvo esté debidamente autorizado por COSVI para hacer dicha divulgación o lo requieran sus obligaciones como empleado de COSVI. [...]

2. [...] El Acuerdo de Confidencialidad protege y aplica a la información Confidencial específica de COSVI, detallada en este Acuerdo, que sea de conocimiento particular y propio de COSVI necesario para proteger un interés legítimo del patrono, que de ser divulgada, su negocio se vería sustancialmente afectado. [...]

6. El Manual del Empleado de COSVI también contiene un COMPROMISO DE MANEJO Y NO DIVULGACION DE INFORMACION CONFIDENCIAL:
[...] Esta información incluye, pero no se limita a, información de nuestros proveedores de servicios de salud e información médica confidencial de nuestros beneficiarios y empleados.

Es condición de empleo para todo empleado de COSVI familiarizarse con las normas relacionadas al manejo de información, así como con el compromiso de no divulgación de información confidencial.

Por lo tanto, todo empleado de COSVI vendrá obligado a lo siguiente:
- No divulgar información confidencial, excepto a las fuentes autorizadas en virtud de sus funciones. [...]

7. El Manual del Empleado de COSVI también contiene una sección titulada Comportamiento Ético y Profesional:
Cada empleado de la Cooperativa de Seguros de Vida de Puerto Rico, COSVI, es responsable por la integridad y las consecuencias de sus acciones. Se debe observar en todo momento los más altos niveles de honestidad, integridad y el sentido de lo que es justo y razonable en todas nuestras actividades de negocio y nuestro trato con nuestros semejantes, específicamente con nuestros prospectos, asegurados, competidores, el público en general nuestros compañeros de trabajo y del cooperativismo. Trabajaremos por todos los medios para que cada empleado de COSVI se comporte siempre de tal manera que ni siquiera dé la apariencia de ser impropio, ilegal o inmoral, ni que en alguna forma pueda afectar o poner en ridículo a nuestra imagen o a nuestros clientes. [...]

8. El Manual del Empleado de COSVI también contiene una sección titulada Código de Conducta:
Para poder cumplir con nuestra política sobre comportamiento ético y profesional, cada uno de nuestros empleados, incluyendo la fuerza ventas, debe observar rigurosamente los siguientes principios: [...] Respetar la confianza que depositan en

nuestra empresa todos los prospectos y asegurados y celosamente proteger cualquier información confidencial que se nos ofrezca referente a sus asuntos personales o de negocio. Entrada 31.

9. El Manual del Empleado de COSVI también contiene una sección titulada NORMAS GENERALES DE CONDUCTA DE LOS EMPLEADOS que, entre otras cosas, lista una serie de ejemplos de conducta no permitida a tenor con diferentes normas, incluyendo:

| NORMA | EJEMPLOS DE CONDUCTA NO PERMITIDA |
|---|---|
| 5 Se guardarán en estricta confidencialidad todos los asuntos de la institución, en particular, la información relacionada con clientes. | Divulgar u ofrecer información de naturaleza oficial o confidencial a clientes, empleados o personas ajenas a la institución, sin estar debidamente autorizado. Utilizar los sistemas de información para fines personales o para transferir, comunicar o divulgar su contenido a otros empleados o personas ajenas a la institución. [...] |
| 6. Cumplir con, y velar por, el cumplimiento de las reglas de seguridad de COSVI | |
| 15. Cumplir con la siguiente políticas o normas establecidas por instituciones y/o aquellas que se establezcan en el futuro:<br>☐ Acuerdo de Confidencialidad<br>☐ Código de Ética<br>☐ Política de Conflicto de Intereses<br>☐ Deberes de los empleados<br>[…]<br>☐ Política sobre el uso de Microcomputadora, Red de Internet, Correo y Comunicación Electrónico, e Impresores portátiles<br>☐ Política sobre Compromiso de Manejo y no divulgación de Información<br>[…]<br>☐ Compromiso de Manejo y No Divulgación de Información Confidencial<br>[…] | Incurrir en la violación de cualquiera de las políticas mencionadas y aquellas que se establezcan en el futuro |

| ⬜ Normas Conducta de Empleados | |
|---|---|

**[...]**

12. La información confidencial se puede compartir entre empleados exclusivamente cuando es necesaria para ejecutar el trabajo del empleado recibiéndola. Testimonio [de] Santiago.

13. COSVI emplea a los Representantes Autorizados Exclusivos mediante un contrato titulado "Nombramiento Representante Autorizado Exclusivo Público General" que dispone, entre otras cosas:

> El Representante Autorizado(a) Exclusivo(a) se obliga a no divulgar a terceros toda aquella información de negocios, entre ellas, pero sin limitarse a costos, tarifas, datos financieros, fuentes de suministro, la cual haya sido adquirida como parte de sus funciones y no sea de conocimiento público. Entrada 31.

**[...]**

16. El 4 de diciembre de 2017, Hurtado y la Cooperativa otorgaron un Acuerdo de Confidencialidad que, entre otras cosas, estipula:

> [U]sted como empleado, por medio de este acuerdo, acepta y se compromete en cuanto a lo que es Información Confidencial a:

> 1. No divulgar, salvo este debidamente autorizado para hacer dicha divulgación o lo requieran sus obligaciones como empleado de COSVI. No utilizará ni divulgará, en ningún momento mientras este empleado o luego de haber cesado su empleo con COSVI, a otras personas, directa o indirectamente o en beneficio propio, ninguna información Confidencial, que adquiera durante el curso de su empleo con COSVI y que tuviera relación a su empleo, sin antes obtener el consentimiento de COSVI por escrito.

> 2. Toda referencia de información Confidencial, desarrollada por usted durante su empleo con COSVI y que de manera directa o indirecta su único fin y/o propósito y/o utilidad sea facilitar y/o beneficiar y/o adelantar los objetivos suyos en cuanto estos se relacionan con la empresa y/o tareas asignadas a usted por la empresa o que lleguen a usted durante el curso de su empleo con COSVI, son y serán propiedad de COSVI y toda referencia o copia de las mismas serán devuelta a COSVI, en la eventualidad de que su empleo con esta finalice. Entrada 31.

**[...]**

19. Los Representantes Autorizados Exclusivos (RAEs) de Público General están autorizados a acceder la información de los clientes registrados en LION para los cuales son agentes, pero no a la información de clientes registrados de otros agentes. Entrada 31.

20. Cuando un empleado no autorizado necesita acceso a un nivel de información al cual no puede automáticamente acceder en el sistema, debe solicitar el acceso al módulo correspondiente a través de su supervisor(a). Testimonio [de] Santiago.

**[...]**

22. La Querellante tomó un "Exámen[] para el Adiestramiento de la Seguridad de la Información" donde se le preguntó: "1. Entre la información confidencial de un cliente se encuentra:" y ella marcó la contestación "a: Seguro Social, fecha de nacimiento, Resultados de pruebas médicas." Entrada 31.

El Foro primario concluyó que la señora Hurtado Suárez incurrió en varias violaciones al Manual de Empleados de forma reiterada. Señaló que la interpretación propuesta por la apelante era forzada y contraria a la letra clara del Manual de Empleados. De manera que, el simple hecho de que la consigna de COSVI fuese "Somos un equipo", no justifica el que la apelante haya burlado los controles internos del sistema LION para compartir información confidencial con un empelado que no tenía acceso al sistema. Por todo esto, el foro primario declaró sin lugar la *Querella* contra COSVI.

Inconforme, la señora Huertas Suárez acudió ante esta Curia y nos planteó la comisión de los siguientes errores:

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA DE SAN JUAN AL DECLARAR NO HA LUGAR LA QUERELLA PRESENTADA, SIN TOMAR EN CONSIDERACIÓN QUE NUNCA SE AMONESTÓ O SE PRESENTÓ QUEJA SOBRE LA EMPLEADA.**

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA DE SAN JUAN AL DETERMINAR QUE LA QUERELLANTE COMPARTIÓ INFORMACIÓN CONFIDENCIAL CON OTRO COMPAÑERO DE TRABAJO EN CONTRAVENCIÓN CON EL MANUAL DEL EMPLEADO.**

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA DE SAN JUAN AL NO DETERMINAR QUE LA CONSIGNA DE COSVI ES "SOMOS UN EQUIPO" Y LA QUERELLANTE SIEMPRE ACTUÓ COMO PARTE DEL MISMO.**

Oportunamente, COSVI compareció mediante escrito en oposición. Contando con la comparecencia de todas las partes, procedemos a resolver la controversia ante nuestra consideración.

**-II-**

**A. Procedimiento Sumario de Reclamaciones Laborales**

La Ley Núm. 2, *supra*, se creó con el fin de establecer un procedimiento sumario para los casos de reclamaciones de obreros y empleados contra sus patronos por servicios prestados. *Collazo Muñiz v. New Fashion World Corporation*, 2025 TSPR 22, 215 DPR ___ (2025). La naturaleza sumaria de este proceso responde a la política pública de "abreviar el procedimiento de forma que sea lo menos oneroso posible para el obrero". *Dávila, Rivera v. Antilles Shipping, Inc.*, 147 DPR 483, 492 (1999).

**B. Ley Contra el Despido Injustificado**

En nuestra jurisdicción existe una clara política pública protectora de empleo. Cónsono con ello, se creó la Ley Núm. 80, *supra*, con el fin de proteger a los obreros que han sido despedidos injustificadamente y para desalentar a los patronos de incurrir en dicha práctica. *Ruiz Mattei v. Commercial Equipment*, 2024 TSPR 68, 214 DPR ___ (2024); *Feliciano Martes v. Sheraton*, 182 DPR 368, 379-380 (2011); *Vélez Cortés v. Baxter*, 179 DPR 455, 468-469 (2010). La Ley Núm. 80 les permite a los empleados despedidos reclamar a su patrono una indemnización, conocida comúnmente como la mesada, cuyo propósito es proveer una ayuda económica para que estos puedan cubrir sus necesidades básicas durante la etapa de búsqueda de un nuevo empleo. *Díaz v. Wyndham Hotel Corp.*, 155 DPR 364, 375 (2001).

Ahora bien, ello no implica que existe una prohibición absoluta contra el despido de un empleado. Esto es, si media justa causa, el empleado puede ser despedido. El Artículo 2 define justa causa como "*aquella que no esté motivada por razones legalmente prohibidas y que no sea producto del mero capricho del patrono*". 29 LPRA secc. 185b. De igual forma, la Ley Núm. 80 señala que "*se entenderá por justa causa aquellas razones que afecten el buen y normal funcionamiento de un establecimiento*". *Íd.* La Ley Núm. 80 enlista una serie de razones no taxativas que constituyen justa

causa para el despido. Entre estas, se considera justa causa para el despido la "*[v]iolación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado*". 29 LPRA secc. 185b(c).

Nuestro máximo foro ha mencionado que, "los patronos están en libertad de adoptar los reglamentos y las normas razonables que estimen necesarias para el buen funcionamiento de la empresa y en las que se definan las faltas que, por su gravedad, podrían acarrear el despido como sanción." *SLG Torres-Matundan v. Centro Patología*, 193 DPR 920, 930-931 (2015); *Jusino et als. v. Walgreens*, 155 DPR 560, 573 (2001).

Es importante resaltar que, la violación a las reglas de un patrono podría ser motivo justificado para el despido de un trabajador, siempre y cuando: **(1) la violación a los reglamentos sea reiterada; (2) las reglas y los reglamentos sean razonables; (3) se suministre oportunamente una copia escrita de las reglas y los reglamentos al trabajador**; y (4) el despido del empleado no se haga por mero capricho del patrono o sin una razón relacionada con el buen y normal funcionamiento del establecimiento. *Feliciano Martes v. Sheraton*, 182 DPR 368, 381-382 (2011).

Es menester señalar que la casuística no favorece el despido como sanción a la primera falta, pero sí considera una sola ofensa o primera falta como justa causa cuando por su gravedad y potencial de agravio pone en riesgo el orden, la seguridad o la eficiencia que constituyen el funcionamiento normal del establecimiento. *Delgado Zayas v. Hosp. Int. Med. Avanzada*, 137 DPR 643, 649 (1994). De acuerdo con la norma, la falta o el acto aislado que ocasione el despido en primera ofensa tiene que ser "de tal seriedad o naturaleza que revele una actitud o un detalle de su carácter, tan lesivo a la paz y al buen orden de la empresa, que constituiría imprudencia esperar

su reiteración para separarlo del establecimiento". *Srio. del Trabajo v. I.T.T.*, 108 DPR 536, 544 (1979).

Cónsono con lo anterior, ser deshonesto constituye una falta grave que tiende a destruir la dinámica laboral, denota ausencia de valor moral y afecta el buen funcionamiento de la empresa. *Miranda Ayala v. Hosp. San Pablo*, 170 DPR 734, 741 (2007).

**-III-**

La señora Hurtado Suárez acude ante nos y plantea que el foro primario incidió al declarar Sin Lugar su *Querella* y, como consecuencia de ello, sostener que medió justa causa para su despido. Recordemos que la apelante se desempeñó como analista de reclamaciones para COSVI y que fue despedida por compartir información confidencial con otro empleado de la apelada. La señora Hurtado Suárez nos pide que tomemos en consideración tres asuntos: (1) que nunca fue sujeto de amonestaciones o quejas; (2) que sus acciones no fueron contrarias al Manual de Empleados; y, (3) que siempre actuó conforme a la consigna "Somos un equipo". Al igual que el foro primario, nos parece que la interpretación de los hechos y del Manual de Empleados propuesta por la apelante es forzada y contraria al mencionado manual.

Es un hecho probado que la señora Hurtado Suárez compartió información confidencial de ciertos clientes de COSVI con el señor Carrión Brunet, otro empleado de la apelada. Si bien es cierto que ambos laboraban en el mismo lugar, el puesto que ocupaba el señor Carrión Brunet no le permitía tener acceso a toda la información confidencial de los clientes. Éste tenía acceso solo a aquella información confidencial perteneciente a los asegurados de su cartera. Aun cuando la información de los clientes no salió de COSVI, esto desató una llamada al centro de llamadas por parte de una clienta con la preocupación de que un desconocido tuvo acceso a su información personal y confidencial. De modo que, el señor

Carrión Brunet violó las normas y políticas de confidencialidad de COSVI con la ayuda directa de la señora Hurtado Suárez.

Según se estableció *ante,* el Manual de Empleados de COSVI establece en varias instancias la importancia de proteger la información confidencial de los clientes.[74] Particularmente, sobre la no divulgación de la información confidencial de los clientes a terceros no autorizados. Surge del expediente y del propio testimonio de la señora Hurtado Suárez, que COSVI le suministró copia del Manual de Empleados. Ahora bien, la apelante plantea que no debió ser despedida por su primera ofensa y mucho menos cuando compartió información de manera interna con otro empleado. Nos invitó a interpretar el Manual de Empleados de COSVI a los fines de que no se considere a un empleado de la propia cooperativa apelada como un tercero no autorizado.

Un estudio minucioso del expediente ante nuestra consideración revela que todos los clientes cuya información la señora Hurtado Suárez filtró tenían RAEs asignados. Contrario a la explicación de la póliza huérfana, la apelante reconoció que todos esos clientes tenían RAEs asignados. Es precisamente por esto que el señor Carrión Brunet no tenía acceso a las pólizas de dichos clientes. Como estos clientes no formaban parte de la cartera de pólizas del señor Carrión Brunet, éste era un tercero no autorizado a acceder la información confidencial. Al no tener acceso a las pólizas, el señor Carrión Brunet recurrió en **múltiples ocasiones** a la señora Hurtado Suárez, quien tenía acceso a todas las pólizas de los clientes de COSVI.

De todo lo anterior se desprende que: (1) la apelante conocía las normas y políticas sobre confidencialidad de COSVI y (2) la apelante violó dicho Manual de Empleados en varias ocasiones. Ante

---

[74] Apéndice de la Apelante, págs. 45-127.

este cuadro, nos parece que las acciones de la apelante no podían subsanarse con una mera amonestación. Sus acciones constituyeron una violación seria a la normas y políticas de confidencialidad de la cooperativa apelada e incidieron en el buen y normal funcionamiento de COSVI. Tanto es así, que la Oficina de Auditoría Interna y Cumplimiento inició una investigación, la cual fue revisada por varios departamentos de COSVI, con el fin de atender la llamada realizada por A.S.F.

Cabe señalar que aun si consideráramos esta como su primera falta, la realidad es que la información provista a terceros es una sensitiva y protegida no tan solo por normas jurídicas, sino por controles implementados por COSVI para prevenir que llegue a terceros nos autorizados. Así pues, determinamos que constituiría una imprudencia esperar a que se repitiera esa conducta para entonces separar a la empleada de su puesto. Asimismo, determinamos que el proveer acceso de información de los datos protegidos sobre clientes de COSVI es tan lesiva al buen orden y el nombre de la empresa, que no nos parece irrazonable que COSVI decidiera actuar de manera contundente e inmediata para prevenir este tipo de conducta de forma reiterada y mucho menos esperar a que la información se proveyera a un particular fuera de la empresa. Cabe señalar que la deshonestidad constituye una falta grave que igualmente constituye justa causa para separar a un empleado de su empleo.

Luego de analizar la prueba documental y los testimonios vertidos en el juicio, concluimos que el foro primario no cometió los errores señalados.

-**IV-**

Por los fundamentos antes expuestos, **confirmamos** la *Sentencia* emitida por el Tribunal de Primera Instancia.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones